UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
------------------------------X

CINA A. RYAN,

          Plaintiff

              v.                    Civil Action 14-1422

FEDERAL BUREAU of
INVESTIGATION, ET AL.,

          Defendants
------------------------------X

                              Washington, D.C.
                             Thursday, May 14, 2015
                                  10:00 A .M.

                  TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE TANYA S. CHUTKAN
                   UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:    CINA A. RYAN, Pro Se
                      5480 Wisconsin Avenue # 1214
                      Chevy Chase, MD 20815

For the Defendants:   Peter Rolf Maier, Esq.
                      U.S. ATTORNEY'S OFFICE
                      Civil Division, Room E4822
                      555 Fourth Street, NW
                      Washington, DC 20530
                      (202) 252-2578

Court Reporter:       Lisa Walker Griffith, RPR
                      U.S. District Courthouse
                      Room 6507
                      Washington, D.C.  20001
                      (202) 354-3247

1                     P-R-O-C-E-E-D-I-N-G-S

2          THE DEPUTY CLERK:  Your Honor, this is Civil Case

3     14-1422, Cina A. Ryan versus The Federal Bureau of

4     Investigation, et al.

5          Plaintiff is appearing pro se.  Peter Maier and

6     Katherine Holloman appearing for the defendant.

7          THE COURT:  Good morning, everyone.  This is a FOIA

8     case that -- on which Motions for Summary Judgment have been

9     fully briefed.  I understand the parties have asked for oral

10    argument.  I have a couple of questions.

11         Well, Mr. Ryan, why don't you go ahead.  First of

12    all, you can come up to the podium, sir.  You can come up to

13    the podium and speak.

14         Mr. Ryan, I have a question.  It appears that you

15    argue in your papers that the FBI was required to conduct a

16    search for records held by any and all federal agencies that

17    might be engaged in surveillance of you.  I don't believe

18    that FOIA law requires that the FBI engage in that extensive

19    a search.  Is that your position, sir?

20         MR. RYAN:  No, my position was, according to

21    Attorney General on his FOIA guidelines on September 2009,

22    those agencies that as a contractor or those different, I

23    believe 17 or 18 different agencies, I don't know how many of

24    them, that they received the file for the purpose of

25    management.  Those files is included under the FOIA.

1           THE COURT:  But there has to be some evidence that

2    the FBI would have transferred any files concerning you to

3    those agencies.  Right now there's no evidence that there

4    were any records of you that the FBI transferred to any of

5    those other agencies.  So the FBI isn't, as far as I can read

6    the law, the FBI isn't required to conduct a search of all

7    agencies who could have possibly received storage documents.

8    It's required to conduct a search if there is evidence that

9    documents responsive to your request were transferred to be

10   stored.  And we don't have any evidence of that.

11          MR. RYAN:  That is correct.  But the extent of their

12   surveillance and the amount of harassment I'm experiencing is

13   a lot more than if your agent --

14          THE COURT:  Well, Mr. Ryan, that's what you have

15   alleged.  Whether or not you're being surveilled or you're

16   being harassed is -- the FBI doesn't agree with that.  And

17   that's not the issue for this Court.  The issue for the Court

18   is whether the FBI has adequately searched records that were

19   responsive documents were expected to be --

20          MR. RYAN:  The document that if the FBI search was

21   adequate or was inadequate.  But regarding those agency, I

22   thought maybe because there are too many agency and those

23   agencies, some of them conduct surveillance, security

24   surveillance in our country, in the U.S., the United States,

25   they could have my file.

1          THE COURT:  But Mr. Ryan, that's not the law.  The

2    law isn't that the FBI is obligated to search anywhere that

3    could possibly have a file.  They have to conduct an adequate

4    search according to the law.  And if you're saying that their

5    search is inadequate, you have to tell the Court on what

6    basis you believe it's inadequate and not just simply could

7    be, there could be documents.

8          MR. RYAN:  I would present my exhibit to show that

9    the FBI search was inadequate.

10          THE COURT:  You filed a supplemental motion, but do

11    you have specific, can you proffer to the Court what, for

12    example, which of these agencies whose documents --

13          MR. RYAN:  I'm not sure of that, but as a pro se,

14    I'm not an attorney, I'm a pro se plaintiff, a pro se

15    plaintiff.  I thought it could be because the different

16    agency provided security.  I assume on my own knowledge that

17    they could have, because if the FBI could not locate it on

18    the headquarters, it could be under those local agencies

19    under their management.

20          THE COURT:  See, that's not the status of the law.

21    It's not what could be.  You have to show that they

22    deliberately did not look in places --

23          MR. RYAN:  Right.

24          THE COURT:  -- where -- you have to let me -- we can

25    only speak one at a time -- where the documents would be

likely to be found.  It does not appear that you have alleged

sufficiently any basis for me to conclude that the FBI search

was inadequate because they didn't search places where

documents would be, responsive documents would be likely to

be found.

        MR. RYAN:  I agree with that, Your Honor.

        THE COURT:  So my point is, do you have any further

argument as to why the Government should be obligated to

search the files of other agencies as you suggest in your

pleading?  In other words, we don't have any evidence right

now, there's no information that the FBI gave records

concerning you to another agency.

        MR. RYAN:  No, I agree on that.

        THE COURT:  So, therefore, on what basis, is your

argument that they should be forced to search those agencies'

records just because it's a possibility that there might be

responsive documents?

        MR. RYAN:  I thought maybe they could have, if it is

not, if the file on the headquarter was not located, it's a

possibility it could be on the local agencies, their field

offices.

        THE COURT:  Okay.  That's my other question.  It

appears that you are arguing that since the alleged

surveillance of you began in Florida that the FBI should

search their field offices in Florida.  But it appears that

1   the universal record system that the FBI employs would have

2   found any documents that came, in other words, if there are

3   documents in the field office in Florida, they would have

4   been found with the search that the FBI did.  Isn't that

5   their point?

6           MR. RYAN:  Right.  But the point is, still the main

7   point for me, the search -- the search was not done properly,

8   the actual name, the actual name.  I thought maybe because I

9   live in Florida, maybe the file is still -- could be over

10  there, so --

11          THE COURT:  But you understand, I think the FBI's

12  position, and I will hear from the FBI, is that if the file,

13  if there was a file on you in Florida, that file would be in

14  the FBI central files and a search for your name would have

15  turned up the file if it was in the FBI field office.

16          MR. RYAN:  Right, I agree on that.

17          THE COURT:  So then, if that's the point, then why

18  search the field office if the file is in the central record

19  system, if it exists?

20          MR. RYAN:  Because sometimes files may be misplaced

21  in different location.

22          THE COURT:  But the file would have been entered in

23  a central record.  The FBI doesn't -- the FBI isn't going out

24  and looking in every filing cabinet and in every storage

25  room.  This is an electronic search because their files are

1    electronically stored, so as not to have the kind of

2    situation you describe where boxes are skipped or missed.

3    All these files are put in a searchable electronic database

4    which can be searched.  It doesn't matter where the actual

5    paper is, if it's in the FBI files, it can be searched

6    electronically, if I'm correct, and I guess I'll have the FBI

7    talk about that in more detail.

8            So the FOIA law requires that the FBI conduct an

9    adequate search.

10           MR. RYAN:  Right.

11           THE COURT:  And is your position that the search is

12   inadequate because they didn't search, physically search the

13   field offices in Florida?

14           MR. RYAN:  No, in Florida, I did in case maybe their

15   file was misplaced according that it could be misplaced.  Or

16   maybe the file was not uploaded on the official file of the

17   FBI because --

18           THE COURT:  Do you have any evidence that that or

19   any -- other than saying maybe, do you have anything to

20   suggest that that happened?  Other than just it's a

21   possibility?  I mean, there's lots of possibilities.

22           MR. RYAN:  According to the testimony of Mr. Otis

23   Reed that the file would not be uploaded on the office

24   outside of the FBI.  Remain in different files on, or might

25   not be uploaded on the official site of the FBI.  Or might be

1    just transferred to another file.

2         THE COURT:  I'm sorry, who did you say that

3    declaration was from?

4         MR. RYAN:  That's, if I may look at the -- that's

5    according to the testimony of Mr. Otis Reed.  Let me look at

6    it over here.  This is on Exhibit G.

7         THE COURT:  Oh, okay.  Exhibit G, is that the

8    transcript?

9         MR. RYAN:  Yeah, that's Exhibit G.  That's the

10   testimony on the case in Salt Lake City.

11        THE COURT:  Are we talking about the testimony filed

12   in document 10.1 ECF number -- that was attached to ECF

13   number 10 in this case?

14        MR. RYAN:  It's filed on -- it's filed on April,

15   plaintiff's affidavit on April 28.

16        THE COURT:  Okay.  Is it at the bottom of the --

17        MR. RYAN:  It's highlighted on page 378 --

18        THE COURT:  Okay, I see it, all right.

19        MR. RYAN:  -- 379.

20        THE COURT:  All right.  This is testimony from, I

21   believe the case in Oklahoma; correct?

22        MR. RYAN:  Right.

23        THE COURT:  This testimony is specific to your case,

24   I mean, to that case, not to your case; correct?

25        MR. RYAN:  Correct, but they're talking about the

1    document that -- there's a secret document if it's not

2    approved by the supervisor it will not be uploaded on the

3    official site of the FBI.  It could go to the I and the S

4    Drives or go to another file -- know where they are when they

5    are not uploaded.

6            THE COURT:  Okay.  So we're not talking about the

7    field offices now, we're talking about the I and the S

8    drives.

9            MR. RYAN:  Right, they do not get uploaded to the

10   official site of the FBI.  They're restricted files.  Those

11   files are not approved.

12           THE COURT:  Okay.  Did you have anything else?

13           MR. RYAN:  Not now, but later on I would like to

14   elaborate on when I get time to show all the other exhibits I

15   have.

16           THE COURT:  What other exhibits do you have?

17           MR. RYAN:  I have the -- first of all, I should say

18   in advance, I should say thank you, Your Honor.  But I said

19   it late because I thought I was going to introduce myself.

20   The Court asked me to introduce myself.  After introducing

21   myself, our thanks to the Court and our thanks to the Court

22   for giving me this opportunity, providing this opportunity to

23   be here in person and explain the situation.  But I didn't

24   get a chance.  I did not say that.  I'll say it now.  And,

25   Your Honor, I have the other exhibits that --

1          THE COURT:  Can you tell me what those exhibits are?

2          MR. RYAN:  The exhibits are that -- the exhibits

3     are --

4          THE COURT:  Because we're at a hearing on the Motion

5     for Summary Judgment.  So when you say exhibits, are those --

6     usually exhibits are attached to a pleading or a motion.

7          MR. RYAN:  Those exhibits, I provide, I file and I

8     provided and on the exhibit it shows that the FBI search was

9     inadequate.

10         THE COURT:  Have you shown these exhibits to counsel

11    for the Government?

12         MR. RYAN:  I sent them the copy for all of -- copy

13    for the Court and for the counsel.

14         THE COURT:  I have these already?

15         MR. RYAN:  Yes, every exhibit, the Court has it on

16    the file.

17         THE COURT:  And which exhibits are you referring to?

18         MR. RYAN:  Exhibit J.  There are several exhibits.

19    I have too many exhibits, Your Honor.

20         THE COURT:  Okay.  I see K, I see L and M.

21         MR. RYAN:  There is J.

22         THE COURT:  Oh, here's J.  J is your amended

23    affidavit.

24         MR. RYAN:  That's three pages, Your Honor.

25         THE COURT:  Yes.

1          MR. RYAN:  One from the document that I filed, those

2     documents are already on the court file, but I provide a copy

3     of the first page for saving the time to just look at it.

4          THE COURT:  Yes, I've looked at those exhibits that

5     you've sent.  So you have J, K, L and M.

6          MR. RYAN:  And M.

7          THE COURT:  Okay.  Yes, the Court has received

8     those.  Was there anything else you wanted to add with regard

9     to those exhibits?

10          MR. RYAN:  Do I get a chance to read those exhibits

11     or you just --

12          THE COURT:  They're in the file.  The Court has

13     reviewed them.  And the other side has reviewed them.  And if

14     there is something else you wanted to tell me about the

15     exhibits.  I have the exhibits and I have read them, so you

16     don't need --

17          MR. RYAN:  Also, there is exhibit -- the second part

18     of the exhibit is Exhibit G, it's not only those three.

19     There are more exhibits.  Exhibit G.

20          THE COURT:  Exhibit G, was that filed with your

21     reply or is that --

22          MR. RYAN:  Exhibit G filed on the latest, May 7th,

23     and 8th.

24          THE COURT:  No, I don't have anything filed on May

25     7th and 8th.  Maybe I do, hold on.

1       (The Court peruses the documents.)

2       THE COURT:  Okay.  I see it now.  Yes, I have

3  Exhibit G and Exhibit F.  I have all those documents in the

4  file and have reviewed them.  I guess my question for this

5  oral argument, did you have anything you wanted to add to the

6  Court that was not included in those documents, any argument

7  you wanted to make?

8       MR. RYAN:  No.

9       THE COURT:  Okay.

10       MR. RYAN:  Do I get a chance later on for saying the

11  last something else or this is that for me?

12       THE COURT:  No, you can -- what is it that you

13  wanted to tell the Court?

14       MR. RYAN:  Later on, whatever the counsel is going

15  to say, so I can --

16       THE COURT:  Oh, yes, you will have a chance to

17  respond.  Yes.

18       MR. RYAN:  Thank you very much, Your Honor.

19       THE COURT:  You're welcome.

20       Mr. Maier, I have some questions.  Or maybe I'll let

21  you respond to Mr. Ryan's arguments first.  And then I'll get

22  to my questions.

23       MR. MAIER:  May it please the Court, I'm happy to

24  take the questions at any time, Your Honor.  Obviously the

25  points that I want to make are in part in response to the

1    arguments that you've heard this morning, but there are some

2    points I think that also cover the materials that were

3    submitted.

4           THE COURT:  Why don't you proceed.

5           MR. MAIER:  The Court's order indicated it wanted to

6    hear principally this morning about the way that the FBI

7    conducted its search and why that discharged the agency's

8    responsibilities under FOIA.

9           The main point, which really has not been discussed

10   this morning, is that the declarations of the agency show

11   that the most likely location for any documents that would be

12   responsive to the plaintiff's FOIA request was in the central

13   records system.  And they did not locate any responsive

14   records there.

15          THE COURT:  Let me ask you about that, Mr. Maier.

16   I'm not sure why the DOJ would not do a search, I mean,

17   obviously you do a search based on Mr. Ryan's name and the

18   many permutations.  Why hasn't there just been a search for

19   Cina Ryan without a middle initial?

20          MR. MAIER:  I think we did.  If you'll look, I think

21   at paragraph 25 of the first Hardy declaration, there's also

22   a footnote to that which explains basically that they not

23   only used various permutations, but the methodology permits

24   the system to find what I would describe as incomplete hits.

25   So if there's only like an 80 percent match between the term

1    that is the search term and the document that is located, if

2    there's only an 80 percent match between the search term and

3    the document, it's still going to pop up.  So I think that

4    portion of the Hardy declaration is fairly convincing.  That

5    if there was anything in the system that had any of the

6    spellings of Mr. Ryan's name.

7        THE COURT:  Well, what about if it had Cina,

8    C-I-N-A, and Ryan, but no middle initial?

9        MR. MAIER:  It would -- that would still pop up.

10   That would still be responsive.  Take a look at paragraph 25

11   of the first Hardy declaration and you'll see, I think, that

12   that's what he's saying.

13       Moreover, when the plaintiff gave additional

14   spellings after he filed the complaint and once litigation

15   was in process, the agency went back and did some additional

16   searches under those spellings as well, using that same

17   fairly responsive methodology and nothing came up.  So, at

18   least in terms of the place where you would expect to find

19   records, in a system that has the best indexing for finding

20   records that are filed by name, nothing came up there.

21       THE COURT:  So, would a phonetic search that

22   includes the middle initial A return results on records that

23   didn't include the middle initial A?

24       In other words, if you did a phonetic search for

25   Cina A. Ryan, would you get back -- would you expect to get

1   back responses for documents that didn't have A in the

2   middle?

3          MR. MAIER:  Sure, sure, because that would be more

4   than an 80 percent match, at least as I understand the

5   methodology.

6          THE COURT:  I'm sorry, go on.

7          MR. MAIER:  There has been some discussion this

8   morning about the possibility that there were files that were

9   responsive, that were no longer in the agency's possession,

10  that the agency might have transferred to some other agency.

11  But our papers made clear two points.

12         When the FBI transfers records to another entity, a

13  record of that transfer remains in the system.  So there were

14  no records of any transfers.  Moreover when the transfer

15  occurs, they don't send out the original, the original

16  remains and the duplicate goes out.

17         THE COURT:  When you transfer records, in other

18  words, if there were documents with Mr. Ryan's name on them,

19  and they were transferred, would it simply be a record of a

20  box going over there or would there by a record that there

21  were documents with Mr. Ryan's name going over?

22         MR. MAIER:  I believe it would reference the

23  documents with Mr. Ryan's name, that's how I understand the

24  system.

25         THE COURT:  And you're saying that -- so I guess I'm

1    just curious then.  What's the point of transferring

2    documents if you're going to keep the originals?

3        MR. MAIER:  I think it may be a matter of how the

4    original is kept.  Let's assume, for example, that they had

5    paper copies.  And they didn't have storage facilities for

6    all of them.  You could retain the original in the C.R.S.

7    system, okay, but you could ship out the copy.  I think

8    that's an example of that.

9        THE COURT:  You mean retain the original

10   electronically?

11       MR. MAIER:  That's right.

12       THE COURT:  Okay.

13       MR. MAIER:  Also I think that the systems that --

14   under the FOIA that permit this are often geared to agencies

15   where the documents are less sensitive than the FBI's.  I

16   think there are other Justice Department components that may

17   make more use of transfer authority and storage authority,

18   not the FBI so much.

19       The other point that I wanted to discuss, which is

20   mentioned this morning, is the possibility that there would

21   be responsive documents in these other drives or other files,

22   the zero file, the I drive, the S drive, the H drive.  The

23   major proposition is that these are far less likely

24   resources, to the extent that they still exist.

25       With respect to the I drive, we explain, I think, in

1   the second Hardy declaration, that the I drive was

2   discontinued as long ago as 2001.  And it was simply a drive

3   where documents were stored temporarily like drafts.  When

4   they went into another system, they left the I drive.  But it

5   doesn't make any difference, the I drive has been a dead

6   letter for 15 years.

7        THE COURT:  Let me ask you this.  Would the FBI

8   expect any of the correspondence it had received from

9   Mr. Ryan or attorneys on his behalf to appear in the C.R.S.?

10       MR. MAIER:  Yes.

11       THE COURT:  Then why weren't those filed?  Where

12  would they be filed?  In other words, if you're doing a

13  search for his name, how come -- where are the documents from

14  him that he sent to you all?

15       MR. MAIER:  Well, I thought in terms of the time

16  period that was covered by the requests, that it wouldn't

17  cover the materials that were part of the correspondence that

18  led up to this litigation.

19       THE COURT:  So if Mr. Ryan sent letters to the FBI

20  ten years ago, eight years ago say, why wouldn't the search

21  have uncovered them?

22       MR. MAIER:  I would have thought they would have

23  uncovered that, if they were -- but whether they would have

24  been covered by the FOIA request is something that I'm not

25  certain about.  I don't think they were.

1          THE COURT:  What if the FOIA request asks for --

2     hold on -- his complete FBI file and you did a search that's

3     as wide ranging as you say it was, for example, the C.R.S.,

4     information in the C.R.S. is duplicated and moved to the

5     A.C.S. so it can be searched.  So the A.C.S. would be

6     expected to contain administrative, applicant, criminal,

7     personnel and other files compiled for law enforcement

8     purposes.

9          Why wouldn't a search of the A.C.S. using Mr. --

10    various permutations of Mr. Ryan's name reveal any

11    correspondence from him to the agency?

12         MR. MAIER:  Looking at the paragraphs, I think six

13    through 14.

14         THE COURT:  This is the Hardy --

15         MR. MAIER:  The original Hardy declaration,

16    paragraph six describes what plaintiff was seeking, a copy of

17    his complete FBI file.

18         THE COURT:  Hold on, let me just get there.  The

19    first Hardy declaration, paragraph six?

20         MR. MAIER:  Six.

21         THE COURT:  Okay.

22         MR. MAIER:  The FBI responds, they ask for some

23    additional information, and then in paragraph ten the FBI

24    advises Mr. Ryan that a search of the indices did not locate

25    any main file records responsive to his request.  I submit

1    that that indicates that they didn't have any correspondence

2    for Mr. Ryan before October 12th, when he made that FOIA

3    request, otherwise it would have popped up.

4            In any event, those aren't -- clearly aren't the

5    records that he's interested in.

6            THE COURT:  Let me ask you to stay there.

7            Mr. Ryan, do you have any -- can you proffer to the

8    Court that you sent correspondence to the FBI before 2010?

9    Did you send letters to the FBI before 2010?

10           You have to come up, you have to come up, you have

11   to come up to the microphone, sorry.

12           MR. RYAN:  Your Honor, the two letters I sent to the

13   FBI are exhibited, but I got to look at the date on those

14   two.

15           THE COURT:  Okay.

16           MR. RYAN:  December 9.

17           THE COURT:  Hold on, I'm going to get those.

18       (Pause.)

19           THE COURT:  You said the letters you sent to the FBI

20   are attached as exhibits?

21           MR. RYAN:  Yes, Your Honor.

22           THE COURT:  Hold on.  I see a page three of your

23   memorandum.  I see an amended affidavit.  Maybe I'm missing

24   something.  Hold on.

25           MR. RYAN:  It's Exhibit E.

1          THE COURT:  Exhibit E, okay, hold on.  I see F.

2          MR. RYAN:  And Exhibit D is the receipt, a copy of

3      the receipt.

4          THE COURT:  Hold on.

5          MR. RYAN:  Exhibit D.

6          THE COURT:  D, okay, well, I see --

7          MR. RYAN:  And E.

8          THE COURT:  I see Exhibit E, which is a Fed Ex

9      package.  I see Exhibit D, which is another -- these are all

10     certified mail receipts.  But what I'm asking, did you send

11     letters to the FBI?

12         MR. RYAN:  Yes.

13         THE COURT:  Okay.  And these mail receipts are what

14     you sent the letters in?

15         MR. RYAN:  Right.

16         THE COURT:  Okay.  So the dates on that, looks like

17     they were received by, they were sent in 2011.

18         MR. RYAN:  '11.

19         THE COURT:  Okay.  So that's my question.  So the

20     FBI would not be expected to have found correspondence from

21     you before October 2010 because you didn't send them anything

22     until 2011; right?

23         MR. RYAN:  Yes.

24         THE COURT:  Okay, I'm sorry, thank you, Mr. Maier,

25     come on up.  Just wanted to clear that up.  Okay.

1          MR. MAIER:  I think what I was talking about these

2     alternative drives.  I was talking about the fact that the I

3     drive was discontinued in 2001.  What about the S and the H

4     drives?  Those aren't capable of the system, as I understand

5     it.

6          THE COURT:  Those aren't what systems?

7          MR. MAIER:  They're not systems, they're not --

8     they're not -- they're not part of the entire system.  The S

9     drive, as I understand it, is a common drive at FBI

10    headquarters.  The H drive is the drives of individual

11    employees, like an individual drive for an Assistant U.S.

12    Attorney, let's say.

13         The bottom line is that those kind of places are far

14    less likely to have the kind of records with respect to an

15    individual who may have been under surveillance than the

16    likelihood that it would be found in the central records

17    system.

18         THE COURT:  Well, what about the -- what about the I

19    drive because the FBI didn't submit anything regarding those

20    drives in this case, but the FBI has submitted declarations

21    in other cases, for example, in *Span versus Department of

22    Justice*, which indicated that the FBI's I drive is a shared

23    drive in its computer network that is used by the FBI field

24    offices to hold preliminary work product investigative

25    documents drafted by an agent so that a supervisor can review

1    and approve a document before placing it in the FBI's

2    official file.

3          In other words, the I drive is intended to hold

4    temporarily draft documents that when finalized become part

5    of the C.R.S.

6          If that's the case, couldn't the I drive hold draft

7    documents that didn't become part of the C.R.S.?

8          MR. MAIER:  I think that's a possibility.  I'm not

9    familiar in terms of the timing of this.  It seems to me that

10   at least in terms of the second Hardy declaration, it's my

11   understanding that this was discontinued in 2001.

12         But given the kinds of documents that Mr. Ryan

13   believes exist in the system which have something to do with

14   surveillance of him, I think it's very unlikely that there

15   would be some sort of draft of a surveillance report that

16   never gets finalized, it never gets put into the system.

17         The problem that I think the FBI has in this case,

18   if we go beyond an examination of how we do the searches, is

19   that it's almost impossible to prove a negative.  Okay?

20   Mr. Ryan believes that there are reports of surveillance

21   about him in the system.  We haven't found anything to

22   indicate that he was ever under surveillance.  But there's no

23   way to conclusively prove that.

24         THE COURT:  Right.  And FOIA doesn't require that

25   you do that.  FOIA requires that you conduct an adequate

search, and so what this -- what we're here today to
determine is whether that search -- or to hear argument on
whether the searches were adequate.  And so I guess my
question to you is really, the reasonableness of the FBI not
searching the share drives.  I mean, you didn't provide a
submission or a response to Mr. Ryan's, I guess, final
supplemental opposition.

But in other words, you need to tell me why it was
reasonable and why an adequate search under these
circumstances in this case would not include a search of the
shared drive.

MR. MAIER:  I think that that's in the second Hardy
declaration, Your Honor.

THE COURT:  Okay.

MR. MAIER:  As for our failure to respond to the
last submission by the plaintiff, that was filed May 8th.  It
was an amended affidavit.  It was my understanding that what
the Court wanted in anticipation of this hearing was one
submission by the plaintiff and one submission by the
defendant.  And to hash the rest of it out here.  So we
didn't have multiple filings or responsive filings.

THE COURT:  No, I'm not faulting you for it.  I
guess that's why I said I wanted to talk about the things I
wanted to talk about.

MR. MAIER:  I understand.

1          THE COURT:  I'm just trying to find the second Hardy

2    declaration here.

3          MR. MAIER:  It's dated April 29th.

4          THE COURT:  Is that attached to ECF 7?  Hold on.

5    Okay.  The second declaration, yes.  Can you point me to the

6    paragraph?

7          MR. MAIER:  Actually, the second Hardy declaration

8    talks about some other matters including the electronic

9    surveillance, the mailing list discusses the transfers to

10   other agency's repositories, and the attempts to search under

11   various names.  Let me see if it's in the first Hardy

12   declaration.  I think it may be.

13       (Pause.)

14          THE COURT:  I would point out that Mr. Hardy's

15   second declaration -- all right.  So there's no --

16          MR. MAIER:  Let me revise my remarks, let me tell

17   you exactly what happened.

18          THE COURT:  Okay.

19          MR. MAIER:  When we got the additional declarations

20   from the plaintiff, I think that was the first time, that is,

21   after the minute order, where there was an identification of

22   these concerns about the I drive, about the S drive and about

23   the H drive.  The agency has given me that information.  And

24   that's why I'm able to respond to the Court today.

25          But because of what we were talking about a minute

1   ago, I didn't really think that it was appropriate to have

2   another submission talking about all of those things because

3   I thought those were the things that I was supposed to

4   provide the Court today.

5           THE COURT:  Right.

6           MR. MAIER:  But I have no problem in providing

7   another declaration that tells you what I'm telling you

8   today.  That is, how these drives work, because I have all

9   that information from the agency.  We haven't submitted it in

10  writing to the Court.

11          THE COURT:  That would be helpful.  Yeah.  I mean,

12  and again, I'm not faulting you for not providing it, but it

13  would be helpful if you could provide me with the additional

14  information regarding those drives.

15          Let me ask you this.  So to date there have been no

16  responsive documents found; right?

17          MR. MAIER:  No, Your Honor.

18          THE COURT:  All right.  Have there been any

19  documents, responsive documents found but withheld?

20          MR. MAIER:  No, Your Honor.

21          THE COURT:  I guess I just wonder why, if the FBI in

22  an abundance of caution did additional searches with various

23  permutations of plaintiff's name, why they didn't just do one

24  with Cina, C-I-N-A, Ryan, no middle initial.  And was that

25  just because it would have been expected to come up through

1    the normal searches with the middle initial?

2         MR. MAIER:  I think so.  I mean, I'm relying

3    primarily on the methodology that's explained in paragraph 25

4    of the original Hardy declaration, which, at least as I read

5    that, made it sound to me that when you put in Cina A. Ryan,

6    you'll get anything that says Cina Ryan.  You'll get anything

7    that he says A. Ryan.  That is, it's a fairly responsive

8    system.  That it's looking for far more than just exact

9    matches.

10         My full name is Peter Rolf Maier.  But I think an

11   FBI search under my name will find things that say Rolf

12   Maier, Peter Maier, P. Rolf Maier, any of those things, the

13   system is sufficiently sensitive.

14         THE COURT:  Would you have your declarant address

15   that issue also?

16         MR. MAIER:  I will, Your Honor.

17         THE COURT:  And am I correct in my assumption that I

18   made earlier when I was talking to Mr. Ryan, that if records

19   were, in fact, transferred from field offices or if records

20   existed in field offices, there's a box of records somewhere

21   in the Florida field office with Mr. Ryan's name on it, those

22   documents would be in the A.C.S. system?

23         MR. MAIER:  Sure.  I mean, it's the nature of

24   electronic record systems.  That discussion you know, it sort

25   of made me nostalgic for the 1950s and '60s, when you could

have -- when you only had hard copies and if it wasn't in --

you didn't look in Fort Lauderdale, you didn't know that the

FBI had documents in Fort Lauderdale, that's the whole

purpose of electronic records systems.  So I think it's

really an impossibility that there are documents that are

misplaced and lurking in the field office somewhere with

Mr. Ryan's name on it that haven't made it into the central

records system.

THE COURT:  All right.  If the FBI had given

records, again I want confirmation of what I said earlier,

which is if the FBI had transferred records to another

federal agency, there would be a record of that transfer?

MR. MAIER:  Absolutely.  In paragraph ten of the

second Hardy declaration, Mr. Hardy states, "Moreover, when

the FBI shares information for law enforcement purposes it

retains the record and merely shares copies."

THE COURT:  Okay.

All right.  Thank you, Mr. Maier.

Mr. Ryan, did you want to respond?

MR. RYAN:  Yes, Your Honor.

THE COURT:  You can come on up.

MR. RYAN:  Thank you, Your Honor.  The counsel has

said that the FBI conducted a search on paragraph 25, I

believe the counsel has said on Cina Ryan, C-I-N-A, R-Y-A-N.

I do not see that name that was -- on any search conducted.

1          THE COURT:  What Mr. Maier said was because they

2     conducted a search for C-I-N-A., middle initial A., Ryan, the

3     way the search is conducted, they would have had a positive

4     hit even if there was just C-I-N-A, R-Y-A-N, without the

5     middle initial.

6          MR. RYAN:  But on the second part, the counsel said

7     that the search was conducted under the alternative name on

8     the bottom of the page of, Your Honor, on the page nine.

9          THE COURT:  We're looking at the second Hardy --

10         MR. RYAN:  Yeah, I think it's the first declaration.

11    Under the post-litigation on the bottom.

12         THE COURT:  Hold on a second.  The first declaration

13    of Mr. Hardy, what page, nine?

14         MR. RYAN:  Page nine, yes, Your Honor.

15         THE COURT:  Yes.

16         MR. RYAN:  On the bottom page it says to conduct the

17    search under Cina Ryan with the S-I-N-A [sic] R-Y-A-N, but

18    the different alternative name or the different name.  But

19    gave assumption and possibility 80 percent, not 100 percent.

20         THE COURT:  Well, FOIA doesn't require 100 percent.

21         MR. RYAN:  No, I'm saying it is not the original

22    name was searched, was the alternative name was searched.

23    And give the possibility the original name existed in the

24    computer just pop up.  And the question for the plaintiff is,

25    Your Honor, why did they not conduct a search?  I provided

the counsel, the FBI with three exhibits, Exhibit A, B, C,

from the plaintiff, from the plaintiff official document,

driver's license, U.S. passport, and the citizenship paper.

All the name on the official paper has been same, written

Cina, with a C, with no middle initial, Cina Ryan.  The FBI

had those -- I'm sorry.

THE COURT:  I guess, Mr. Ryan, the point is that,

the FBI conducted checks with several variations of your

name.

MR. RYAN:  Right.

THE COURT:  They didn't do an original check with

Cina Ryan, no middle initial A.

MR. RYAN:  Right.

THE COURT:  Their explanation is that a search of

Cina A. Ryan would have shown up Cina Ryan with no middle

initial.  The other thing to keep in mind is that they also

did these searches, all the searches with your date of birth,

as you gave them, to make sure that they were narrowing their

search.  And they found no records.  So what you're saying is

they should be required to do a separate search of Cina Ryan

even though Cina A. Ryan would have shown up the same.

MR. RYAN:  Of course, Your Honor.  This is the main

point.  The -- Mr. Hardy, Mr. David Hardy did not want to

sign the declaration under oath that the Cina Ryan with the C

was searched.  And in the future any record shows up under

the Cina Ryan, that Mr. Hardy declaration do not say has been signed that --

THE COURT:  You don't know Mr. Hardy's motivations for signing it.  It appears that Mr. Hardy says in his declaration that a search for Cina A. Ryan would have an 80 percent likelihood of returning Cina Ryan without a middle initial A.  In addition, the FBI used your date of birth to narrow that search.

So my question is, isn't that a reasonable search under the FOIA law?  It appears to me that it is.

Here is the question, Mr. Ryan, if the FBI had done a search of Cina Ryan, C-I-N-A, Ryan, no middle initial A, and come up with no documents, you would be telling me that that was also inadequate; right?

MR. RYAN:  No, but at least I would see if, first of all, if, under my file complaint on August 2014, my first complaint, the name Cina Ryan was -- the name Cina Ryan with the C was mentioned.  If that name was searched at the first place on August 2014, the plaintiff didn't have to provide all the different spelling names to see maybe other people used different spelling names.  Maybe they name, maybe it pop up, maybe a different spelling name if the name was searched under Cina Ryan.

But what I'm saying, Your Honor, the actual name on the official paper of the plaintiff is Cina Ryan with the C,

1   with no middle initial A.  And the FBI, I believe, should

2   conduct a search on that to show that there is no document

3   found under that name.

4        THE COURT:  Mr. Maier, how much, what do we -- I

5   have to say I'm a little perplexed as to why -- I'm looking

6   at the -- I'm looking at the communication from the FBI to

7   Mr. Ryan that was attached to document 44, Exhibit C, I

8   think, to your Motion for Summary Judgment.  And it looks

9   like it's a communication from the FBI to Mr. Ryan where you

10  have his full name as Cina A. Ryan, also known as Cina Ryan.

11       I guess my question is why, with all the different

12  permutations of his name that Mr. Hardy stated he searched in

13  the second declaration, why wouldn't -- an obvious one to me

14  would have been Cina Ryan without the A.  And while I accept

15  your representation that there is an 80 percent likelihood

16  that it would have popped up anyway, I'm not sure if you're

17  going to use Ryan with a R-Y-A-N, and Cina with an S, why

18  Cina Ryan without an A would be not -- why wouldn't you have

19  run a search on that?

20       Here we go.  Yeah, I'm looking at paragraph nine of

21  the second Hardy declaration.

22       The FBI searched for additional variations of

23  Mr. Ryan's name not provided previously.  But it didn't

24  search the one variation of his name that was provided in

25  2010, which was Cina Ryan.  And it does seem sort of odd that

1    the FBI was willing to go above and beyond and search for

2    additional variations of the name that weren't provided

3    previously, but didn't search the one variation of his name

4    that was provided in the firsthand, which was Cina Ryan

5    without an A.

6          And I guess my second question is how much

7    dislocation are we talking about to run that search?

8          MR. MAIER:  May I approach?

9          THE COURT:  Yes.

10         Thank you, Mr. Ryan.

11         MR. RYAN:  Thank you.

12         MR. MAIER:  If I may begin where you left off.  I

13   don't think it would be difficult to run an additional

14   search, but based on my reading of what happened, I don't

15   think this is necessary.

16         I don't think that there is any doubt based on this

17   record that the FBI attempted to locate any responsive

18   records.

19         THE COURT:  I agree with you.

20         MR. MAIER:  Okay.  I think the way this letter was

21   styled may simply be a matter of form.  That is, they may not

22   have spelled out in the letter to Mr. Ryan all of the various

23   permutations of the name that was searched.  But as I read

24   these two things together, I thought that the second letter,

25   which talks about the second search, is only talking about

1    the additional permutations that were the subject of the

2    second search.  They did not run another search under the

3    formulations that they had used the first time around.

4            And I thought that the first time around, the

5    initial search terms were used, Cina A. Ryan and Alireza

6    Shishechi.

7            THE COURT:  So it appears that the FBI, and I agree

8    with you, the FBI seems to have made a good faith effort here

9    to search its records with several permutations of Mr. Ryan's

10   name, except the one that he did provide to them.  And I

11   think it's clear he did provide it to them because the FBI

12   referred to it in their correspondence to him.

13           Now, it's just sort of curious.

14           MR. MAIER:  Maybe I'm not following things, Your

15   Honor.  Here is putting these two affidavits together, what I

16   glean to be the search terms that were used.  The first time

17   around, I'm looking at paragraph 27 of the first Hardy

18   declaration, Cina A. Ryan and Alireza Shishechi.

19           Additionally, paragraph 27 --

20           THE COURT:  Wait one second.  Okay.  Yes.

21           MR. MAIER:  So we've got two names there.  Cina with

22   a C, middle initial A.  Additionally, the FBI searched the

23   alternative spelling of his name, Cina Ryan with an S, noted

24   in plaintiff's complaint.  Again nothing came up.

25           Paragraph 28, it looked in its ELSUR surveys for

1    these other three variations.  Now we get to the repeat

2    searches, which is in the second declaration, paragraph nine.

3              THE COURT:  Right.

4              MR. MAIER:  Now we've got some variations that they

5    didn't look for before.  Cina Ryan with a C.  No middle

6    initial.  Cina Rayan, R-A-Y-A-N.

7              THE COURT:  Wait, where do you see Cina Ryan with a

8    C, no middle initial?

9              MR. MAIER:  Okay.  Paragraph nine, the second Hardy

10   declaration.

11             THE COURT:  Yes.  I see Cina Ryan with an A.

12             MR. MAIER:  Then we have Cina Rayan with first

13   initial S.  Then we have Cina with a C, Cina A. Rayan with an

14   S.

15             THE COURT:  Nowhere is it Cina Ryan with no middle

16   initial A.  And I guess, given the FBI's communication to

17   Mr. Ryan in 2010, where they acknowledge that he has an a/k,

18   that's there's an a/k of Cina, they say Cina A. Ryan, a/k/a

19   Cina Ryan.  Why, if the FBI were willing to search all those

20   variations, I think there are like six, wouldn't they have

21   done, just done one without the middle initial A?

22             MR. MAIER:  I think the answer is in footnote three,

23   on page nine of the first Hardy declaration, footnote three.

24             THE COURT:  Okay.  Hold on.

25             MR. MAIER:  There's an explanation there that they

1    looked under Cina A. Ryan and Alireza Shishechi.  Then they

2    explain in footnote three what that gave them.  With the

3    phonetic search the computer breaks down names based on

4    phonetic characteristics.  The computer will then return

5    results based on whether they phonetically match a certain

6    percentage of the first and last name search.  A.C.S.'s

7    default phonetic match setting for first and last names is 80

8    percent.

9         Thus, in the searches conducted here, any hits that

10   were 80 percent or greater phonetic match to the names Cina

11   Ryan, no middle initial, and Alireza Shishechi would have

12   returned.

13        So, though they only searched for Cina A. Ryan, the

14   footnote makes clear that anything that was 80 percent the

15   same as Cina Ryan would have come up the first time.

16        THE COURT:  Okay.  Thank you, Mr. Maier.

17        All right.  Thank you both.  Mr. Ryan, you have --

18   yes, come on up.

19        MR. RYAN:  Thank you, Your Honor.

20        The counsel has said that the I drive and S drive

21   has been out for quite some time.  On Ms. Dorris' testimony

22   on July 30, 2014, she acknowledged that, she acknowledged

23   that the -- she acknowledged that the I drive already exists

24   in every field office.  The S drive already exists.  So

25   they're not out of line, out of work for the FBI.  There is

1   still working as a data storage for the restricted files.

2          THE COURT:  Let me ask you, Mr. Ryan, so far you

3   have not -- I just want to check something in here.

4      (Pause.)

5          THE COURT:  I'm sorry, go ahead.

6          MR. RYAN:  That's what the testimony I was talking

7   about that the I drive and S drive is still on service as a

8   data storage for the FBI.

9          THE COURT:  All right.  Mr. Maier, I'm looking at

10  correspondence attached as exhibits to plaintiff's complaint

11  in which there's additional -- oh, these are all 2010.  Hold

12  on.

13     (Pause.)

14         THE COURT:  It does appear there's some

15  correspondence from March 2009 from a Mr. Amini, who's an

16  attorney at law in Florida, asking for records of Mr. Ryan,

17  Cina A. Ryan, with a date of birth and a driver's license

18  number, this correspondence was to the Washington

19  Metropolitan Field Office of the FBI in 2009, March 23, 2009.

20         So I guess my question is, if the FBI has done all

21  these searches for documents with Mr. Ryan's name, why

22  haven't they come up with the correspondence that he sent?

23         MR. RYAN:  Thank you, Your Honor.

24         THE COURT:  Before you answer that, Mr. Ryan I want

25  to tell you that the Court has to find that the FBI's search

1    of its records are adequate, not exhaustive.  And given the

2    complete lack of any responsive documents that have been

3    found so far, the Court is not going to require the FBI to

4    look under every -- you know, to conduct an exhaustive

5    search, but only a reasonable one.

6           The question is going to be whether the search of

7    Cina Ryan without middle initial A., whether the 80 percent

8    match likelihood is enough for a reasonable search.  Had

9    there been other documents that were, that the FBI located

10   with your name on it, that might mean that there was a

11   greater likelihood that some documents were amiss.  But the

12   thing to keep in mind is that to date, the FBI has found no

13   documents responsive to your request, none.

14          MR. RYAN:  Your Honor.

15          THE COURT:  And it may be that those documents

16   aren't there.

17          MR. RYAN:  The FBI did not put Cina Ryan with the C

18   on the search.  They used alternative names and they assume

19   that name going to pop up.

20          THE COURT:  Well, they didn't assume.  They said

21   that based on their algorithms or -- based on how the

22   computer conducts its search, that there was an 80 percent

23   match without an A, it would appear.  So it's not an

24   assumption.  That's how their search system works.

25          The question is, is there -- given that

1    representation, is it necessary to do a separate search for a

2    Cina Ryan without a middle initial A, given their

3    representation that it would have popped up under Cina A.

4    Ryan.

5            MR. RYAN:  But, Your Honor, the plaintiff's names on

6    all his official document say Cina, with a C, Ryan.

7            THE COURT:  I understand that you have --

8            MR. RYAN:  They did not search that name.  And this

9    is not as you mentioned, this is something the plaintiff is

10   very curious about it, why all those alternative names,

11   several of them have been searched three times on every -- on

12   the electronic surveillance, on the C.R.S., whatever, Cina

13   with the C., Cina Ryan with no middle initial A, why the FBI

14   did not -- have not searched.  This is my question is for

15   this Court because this is my name, official name.  And I

16   requested to that -- that's the main point for this

17   plaintiff, that the FBI to conduct a search on the Cina with

18   the C with no middle initial A, Cina Ryan.

19           THE COURT:  Well, they may decide to do that, they

20   may not.  If they don't, the Court has to decide whether the

21   existing search with the middle initial A, which they

22   maintain would have been sufficient to bring up documents

23   without the middle initial A is sufficient.

24           But, Mr. Maier, I asked you to answer a question

25   that I haven't let you answer yet.

1          MR. RYAN:  Thank you.

2          THE COURT:  Thank you.

3          MR. MAIER:  Your Honor, this may answer your

4   question.  If you look at the initial Hardy declaration

5   again, page two, paragraph six, the question that is posed is

6   why didn't the FBI come up with the correspondence filed on

7   behalf of Mr. Ryan before all this started.

8          Paragraph six may provide part of the answer.  The

9   second sentence of that paragraph says that plaintiff

10   attached previous correspondence between his attorney and the

11   FBI's Criminal Justice Information Services Division.  It may

12   be that the FBI didn't produce these records because, in

13   fact, they were attached to the letter that Mr. Ryan sent to

14   the agency.

15          The only other explanation that I could come up with

16   would be that there's some possibility at least that

17   correspondence of this kind might not be in the FBI file.

18   There's an explanation in the footnote of what the FBI's

19   Criminal Justice Information Services Division does, and it

20   doesn't look like it includes that correspondence.  But I

21   can't be sure of that.

22          I do have a proposal.  We are going to prepare

23   another declaration for the Court.  I'd like 30 days to do

24   it, although we'll file it more quickly if we can and

25   certainly if the Court so orders.  I would propose that that

1    declaration deal with the following:

2         First it would deal with the question that we've

3    discussed this morning, but we haven't made a submission on

4    with respect to what these other drives contain.

5         THE COURT:  Good.

6         MR. MAIER:  The second thing that we would include

7    is a more fulsome explanation about how these matches work,

8    to answer the question the plaintiff has raised with respect

9    to why there wasn't a search made under a particular

10   formulation of his name.

11        And the third thing that we would address is the

12   question that you just raised.  Why the records search in the

13   response to plaintiff did not include as responsive documents

14   the 3/2010 correspondence that mentions his name that were

15   filed on his behalf.  Those are the three things the

16   declaration --

17        THE COURT:  I think that would be an excellent idea.

18   And the Court would appreciate that.

19        MR. MAIER:  If we could have 30 days, that would be

20   great.  And if we've got the declaration ready sooner, we'll

21   file it sooner.

22        THE COURT:  That would be fine.

23        Do you have any opposition to that, Mr. Ryan?

24        MR. RYAN:  No.

25        THE COURT:  All right.  Thank you, Mr. Maier, I

1    appreciate that.

2          All right.  Do you have anything further?  Yes,

3    Mr. Ryan?

4          MR. RYAN:  If I may.  I did not quite understood

5    that the counsel said they could not conduct a search for

6    Cina Ryan.

7          THE COURT:  He didn't say that.  He didn't say they

8    were going to conduct a search.  They may, they may not.

9    What he said they would do is to provide an additional

10   declaration explaining in more detail some of the things on

11   which I had questions and you had argument including why the

12   searches that they have already conducted would have shown up

13   any documents which had the name Cina Ryan, no middle initial

14   A.

15         It does not -- you see, Mr. Ryan, the fact that they

16   didn't do it in that one combination may raise questions to

17   you.  But if that search would have brought up any document

18   with Cina Ryan, then why they didn't do it is not the point.

19   The point is, if there was a document in their files with the

20   name Cina, no middle initial A, Ryan, and that document would

21   have been brought up by a search of Cina A. Ryan, that's what

22   the Court needs to know.

23         In other words, the Court needs to know that the FBI

24   conducted its search in a way that was adequate and would not

25   have missed responsive documents.  Okay?

1          MR. RYAN:  Your Honor, but it is still, the main

2     point is that's why they do not conduct a search, but then I

3     won't be agree with what the counsel has said because I have

4     objection to that because they're going to provide the same

5     thing they provided before, all those names.  The only thing

6     that is missing, the original name on the plaintiff's

7     official name has left out, and they're going after the

8     alternative name so in case the original name pop up.  That

9     is common sense, Your Honor, that's to plaintiff, that

10    doesn't make sense that they do not search the original name.

11         THE COURT:  Well, the original name was Cina A.

12    Ryan.  That's the name under which the case has been filed.

13         MR. RYAN:  On the discovery, Your Honor, when I

14    realize it, more official document has been written with the

15    Cina Ryan, passport, driver's license, the citizenship,

16    that's original name has been recorded on the United States

17    as my citizen country, the country I have right now, is on my

18    official site, on the official name, why the FBI do not want

19    to run this name.  Your Honor, this is the main question for

20    the plaintiff.  The reason is something must be hiding

21    somewhere.

22         THE COURT:  Well, I understand that's the question

23    for the plaintiff.  The question for the Court is whether the

24    search is adequate.  And I can't order, tell the FBI how to

25    go about its searches.  Who knows?  Maybe the FBI will do a

search for Cina, without a middle initial, Ryan, between now
and the next declaration, but what I need, what the
Government has promised is a declaration with the explanation
in more detail for the reasons that it conducted the search
in the manner that it did, and an explanation of the drives
that you have raised in your pleadings, and an explanation of
why correspondence pre-2010 would not have shown up in its
searches.  And the Court will have to decide if that
declaration is sufficient to warrant summary judgment on
this.

          MR. RYAN:  Yes, Your Honor.  But I'm here as a pro
se.  And if those interferences was not done to the
plaintiff, I would have a high ranking attorney over here to
rebuttal the counsel, what he's talking about, because I'm
not familiar with the law, I'm just a plaintiff that got
tired of the attorneys, they did not really promise what they
do because before even I come over here, I contacted the
attorney in the city and even in the country and they agreed
to take my case.

          Mr. Segal, Mr. Mark Zaid.  And after two or three
days, again somehow they change their mind.  So I wouldn't
come over here, my service over here is I'm not familiar with
the law to be able to defend for myself, but there is still
I'm requesting this Court to look at it as something that the
plaintiff exactly talking about, Cina Ryan with no initial A,

1    Cina Ryan with the C, was not searched.  And I'm requesting

2    this Court to not to dismiss my complaint, dismiss the

3    defendant Motion for Summary Judgment and order them to come

4    to make its search on actual plaintiff official name, Cina

5    Ryan, with the letter C, and no middle initial A.  That's

6    what I'm requesting.

7            THE COURT:  I understand.  Thank you, Mr. Ryan.

8            MR. RYAN:  Thank you very much.

9            THE COURT:  I will take that under advisement.  I

10   will review the Government's submission when it's filed, and

11   I will make a decision after that.  Thank you.  All right.

12       (Matter concluded at 11:16 a.m.)

13                          - o -

14

15

16                  CERTIFICATE OF REPORTER

17        I, Lisa Walker Griffith, certify that the foregoing

18   is a correct transcript from the record of proceedings in the

19   above-entitled matter.

20

21

22

23

24   _____   _____
     Lisa Walker Griffith, RPR                     Date
25