IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CINA A. RYAN,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION and U.S. DEPARTMENT<br>OF JUSTICE,<br><br>Defendants. | Civil Action No. 1:14-cv-01422 |

## THIRD DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD") in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 224 employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively

plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526, Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of plaintiff's FOIA/Privacy Act request of October 12, 2010, requesting his "complete FBI file." *See* ECF No. 1, Complaint, at Exhibit 10.

(4) This is my third declaration in this case. It supplements and incorporates by reference my prior two declarations. *See* ECF Nos. 4-3 Hardy Declaration (hereinafter "1st Hardy Declaration" or "1st Hardy Decl."), and 11, Second Hardy Declaration (hereinafter "2nd Hardy Declaration" or "2nd Hardy Decl."). The purpose of this declaration is to address three issues raised by the Court during the May 14, 2015 hearing held on the FBI's Motion for Summary Judgment in this case.

(5) First, the Court queried why the FBI did not conduct searches for records using only plaintiff's first and last names (Cina Ryan), in addition to his first and last names and middle initial (Cina A. Ryan). Second, the Court queried why the FBI did not locate the March 23, 2009 letter that plaintiff's attorney sent to the FBI's Washington Field Office, *see* ECF No. 1

2

at Exhibit 4. Third, the Court queried why the FBI did not search I:, S:, and H: drives for responsive records.

### *Why The FBI Did Not Separately Search Plaintiff's Name Without His Middle Initial*

(6) As explained in my first declaration, the FBI conducted a phonetic search of its Central Records System ("CRS") using the name "Cina A. Ryan" (as well as "Alireza Shishechi" and "Sina Ryan"). Such a search returns any hits that are an 80% or greater phonetic match to the name searched. *See* ECF No. 4-3, 1st Hardy Decl., at ¶¶ 25 & 27 and fn. 4 & 5.[1] Searching "Cina Ryan" would not have captured more/different records than would have been located by searching "Cina A. Ryan" because the two names are not more than 80% phonetically different from one another.

(7) The following is a more detailed description of how the phonetic search works. In attempting to locate records responsive to plaintiff's request for his "complete FBI file," RIDS used the phonetic search capabilities of ACS and in particular, used the "SP" search capability of ACS. "S" means "six-way" and "P" means "phonetic."

    (a) With an S-type search, the computer automatically breaks a name down and searches the index for six different breakdowns of the name entered: (1) Last Name, First Name, Middle Name; (2) Last Name, First Name, Middle Initial; (3) Last Name, First Name; (4) Last Name, First Initial, Middle Name; (5) Last Name, First Initial, Middle Initial; and (6) Last Name, Middle Name.

    (b) With the P-type search function, the computer breaks names down based on their phonetic characteristics. The computer will then return results based on whether or not

---

[1] The FBI also conducted phonetic searches of four additional spellings of plaintiff's name that he provided in his Amended Opposition to the FBI's Motion for Summary Judgment, which yielded negative results. *See* ECF No. 11, 2nd Hardy Decl., at ¶ 9.

they phonetically match a certain percentage of the first and last name searched. ACS's default phonetic match setting for first and last names is 80%.

(8) Because RIDS used an SP-type search here, the computer returned results that were an 80% or greater phonetic match to the six-way breakdowns of the names RIDS searched in ACS. Accordingly, any instances of the name "Cina Ryan" (or even "Sina Ryan") would have been returned by searching "Cina A. Ryan."

(9) Nevertheless, in an effort to finally resolve this matter, the FBI conducted an SP search of its CRS using only the name "Cina Ryan" without a middle initial. This search did not locate any responsive records.

(10) The FBI's ELSUR Indices were searched using both the names "Cina A. Ryan" and "Cina Ryan," as well as the other names he provided. As explained in my first declaration, those searches yielded negative results. *See* ECF No. 4-3, 1st Hardy Decl., at ¶¶ 26 & 28.

### *Why The FBI's Searches Did Not Locate Plaintiff's Attorney's March 23, 2009 Correspondence*

(11) Plaintiff attached a letter that his attorney wrote to the FBI's Washington Field Office ("WFO"), dated March 23, 2009. *See* ECF No. 1, Complaint, at Exhibit 4. The FBI did not find this letter during any of the multiple searches that it conducted in response to plaintiff's FOIA request for his "complete FBI file." It is difficult to prove a negative – *i.e.*, to establish for certain why something was not found when the FBI searched the only record systems that it concluded would include records responsive to plaintiff's request if they existed. What is certain is that the FBI's searches failed to locate any file on plaintiff.

(12) To be sure, the FBI retains records that are not associated with a specific investigative file or individual. Such records are serialized into the CRS in "zero files" or "control files." Zero/control files are opened by FBI Headquarters Divisions, Field Offices, or

4

Legats as catch-all files that capture a variety of information related to FBI operations that is not related to a specific investigative file. These files are part of the CRS. Records and documents are serialized into these files in the same manner as records and documents are serialized into investigative files. Pertinent information in the serialized records and documents is also indexed in the same manner as it would be indexed in investigative files.[2] Consequently, if information about plaintiff was indexed in a control file serial under any of the seven names that he provided and that the FBI searched, that serial would have been captured by the FBI's searches of the CRS. The FBI's multiple searches of the CRS in this case did not locate plaintiff's attorney's letter, however, leaving one to surmise that it was not retained and indexed to plaintiff's name in the CRS.[3]

(13)  Finally, the FBI does not retain every piece of correspondence that it receives. The FBI retains, serializes, and indexes records containing information that may be necessary or pertinent for the conduct of agency business. Here, plaintiff's attorney's letter was unsolicited and not related to any investigation or other FBI business.

### *Why The FBI Did Not Search I:, S: and H: Drives*

(14)  The FBI is required to conduct searches reasonably calculated to locate responsive records and is not required to conduct exhaustive searches. Here, the plaintiff explained his belief that he has been the subject of FBI surveillance since 2001. Assuming for the sake of argument that this were true, the two record systems where such information would

---

[2] Pertinent information would consist of information that the FBI may have some need to retrieve at a later date in furtherance of agency business.

[3] Plaintiff also attached a March 19, 2012, letter from his attorney addressed to Attorney General Holder. *See* ECF No. 1, Complaint, at Exhibit 17. This letter, having been sent more than a year after the FBI received and responded to plaintiff's FOIA request, is outside the search cut-off date for that request. In any event, the FBI's searches of the CRS also did not locate this letter. (Plaintiff has not provided any information indicating that this letter was sent to the FBI. The mailing address was to the Department of Justice, with the notation "Attn: Office of General Counsel (FBI).")

5

be maintained are the CRS and ELSUR Indices. The CRS is the FBI's most comprehensive records system and includes all investigative records; the ELSUR Indices specifically document the targets of electronic surveillance. The determination that these systems were the only ones where responsive records would be located, if they existed, was based on RIDS's experience and expertise regarding FBI records and records systems. If the FBI's searches of either record system had produced leads suggesting that responsive records were maintained in other records systems, the FBI also would have searched those systems. But there is simply no information in this case indicating that the FBI has ever had any investigative interest in plaintiff or that it has any records about him. This is why the FBI limited its searches to the CRS and the ELSUR Indices.

(15) In plaintiff's supplemental hearing submissions of April 28 and May 7, 2015, he for the first time suggested that the FBI should have searched I:, S:, and H: drives. *See* ECF Nos. 8 & 10. However, other than noting that the FBI has used those drives in the past (and has searched at least some of them in other cases), he provided no basis for the FBI to conclude that it is reasonably likely that records *about him* would be located by searching such drives.

(a) There are no longer any I: drives to be searched. The I: drive was known as the "drafts" drive and was used as a temporary working folder for electronic media. The I: drive temporarily stored electronic media prior to its final approval and serialization into an investigative file in the CRS. Once final approval was obtained, the material was added/serialized to the official investigative file in the CRS, with pertinent information indexed. It was simultaneously deleted from the I: drive. In 2001, all FBI Field Offices were instructed to perform comprehensive searches of their I: drives. Any information located through these I: drive searches was forwarded to FBI Information Technology personnel for comparison with

6

information already entered or uploaded into the FBI's automated ACS system.[4] Any records that were not already included in that system were added to the pertinent investigative files at that time. Thereafter, the I: drive was eliminated. So, if information about plaintiff had ever existed on the I: drive, it would have been added to the CRS and would have been located by the multiple searches that the FBI has conducted in an effort to locate records about plaintiff.

(b) There is no single S: or H: drive in existence today. S: drives are shared or common drives that are used by FBI Headquarters Divisions and Field Offices. H: drives are individual employees' home drives. The FBI does not generally search shared or home drives unless (1) a request seeks records that would only be located on a particular division or office shared drive or on a particular employee's home drive, or (2) searches of the CRS or other records systems (*e.g.*, the ELSUR Indices) produce leads to documents maintained on a shared or home drive. This is because any case-related records would be maintained in the CRS. Here, the comprehensive searches of the CRS and ELSUR Indices failed to locate any information about plaintiff – or even give any indication at all that the FBI has ever had any investigative or other interest in him. Consequently, the FBI has concluded that a search of (unspecified) S: or H: drives would not be reasonably calculated to locate responsive records.

## CONCLUSION

(16) The FBI's search efforts in this case have been more than reasonable. At this point, RIDS has searched the CRS and ELSUR Indices no less than three times a piece using the seven different names/name variations that plaintiff has provided and going so far as to separately search name variations that are similar enough in spelling that they would have been captured by other searches (*e.g.*, searching "Cina Ryan" and "Sina Ryan" when a search for

---

[4] The 1st Hardy Declaration provides comprehensive descriptions of the CRS and ACS, and their relationship to one another. *See* ECF No. 4-3, 1st Hardy Decl., at ¶¶ 15-20.

7

"Cina A. Ryan" would have captured the first two variations). The CRS (which is the FBI's most comprehensive records system) and ELSUR Indices are the only records systems that are reasonably likely to maintain records about plaintiff. However, searches of those systems reveal no responsive records and give no indication that the FBI has ever had any investigative or other interest in plaintiff. There are no other records systems that are likely to maintain records responsive to plaintiff's request for his "complete FBI file."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of June, 2015.

_____
DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia