UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CINA A. RYAN )<br><br>   Plaintiff, )<br><br>     v. )<br><br>FEDERAL BUREAU OF )<br>INVESTIGATION, *et al.*, )<br><br>   Defendants. ) | Civil Action No. 14-cv-1422 (TSC) |

## **MEMORANDUM OPINION**

Plaintiff Cina A. Ryan filed a FOIA request with the FBI seeking his "complete FBI file." The FBI conducted a search and found no responsive records, a result Plaintiff challenges in this lawsuit. Presently before the court is Defendants' motion for summary judgment (ECF No. 4) and Plaintiff's opposition thereto (ECF Nos. 7, 8). Defendants did not file a reply in support of their motion.[1] For the following reasons, the court GRANTS in part and DENIES without prejudice in part Defendants' motion.

---

[1] Plaintiff requested oral argument to explain "under oath, all the facts of [his] affidavit and his complaint, including what transpired the night of the FBI's staged rape case," an event which Plaintiff avers was part of the FBI's surveillance of him. (Pl. Affidavit, ECF No. 7 at 2-3). Plaintiff also sought to "subpoena some of the individuals mentioned in his affidavit to be questioned by the Plaintiff and testify before the Court," (Pl. Opp'n, ECF No. 7 at 7), referring to a number of his Iranian-American acquaintances he believes have been assisting the FBI in its surveillance of him. (Pl. Affidavit, ECF No. 7 at 3-4). In response to this request, the court scheduled and held oral argument on the motion for summary judgment. In lieu of hearing live testimony about matters only tangentially related to the adequacy of the FBI's search, the court invited Plaintiff and the FBI to submit any supplemental materials in writing in advance of the hearing, which the parties did. (ECF Nos. 10-11). Plaintiff responded to Defendants' additional submission on May 8, 2015. (ECF No. 12). In light of lingering questions at the conclusion of the May 14, 2015 hearing, the FBI submitted a Third Hardy Declaration (ECF No. 16). The court considered all of this material in reaching the conclusions described in this opinion.

1

I. **BACKGROUND**

Plaintiff believes he has been under constant FBI surveillance since shortly after the terrorist attacks of September 11, 2001. (Compl. ¶ 8). In an effort to confirm this belief his counsel submitted a Freedom of Information Act request to the FBI in April 2010 for all records kept on him. (Compl. ¶ 24; Declaration of David Hardy ["Hardy Decl.] Ex. A at 3). The FBI responded with a letter stating there was no arrest record for Cina Ryan. (Hardy Decl. Ex. A at 4). Dissatisfied with this response, Plaintiff personally submitted a second FOIA request in October 2010 for his "complete FBI file." (Hardy Decl. ¶ 6, Ex. A at 1). The FBI responded on November 10, 2010 to state it located no responsive records and, to the extent Plaintiff sought "access to records that would either confirm or deny an individual's placement on any government watch list," the FBI would neither confirm nor deny the existence of such documents, pursuant to FOIA exemptions 2 and 7(E).[2] (Hardy Decl. Ex. E). Plaintiff appealed that response on December 2, 2010. (Hardy Decl. Ex. F). The Department of Justice's Office of Information Policy (OIP) affirmed the FBI's response on June 21, 2011.[3] (Hardy Decl. Ex. H). This suit followed.

**A. The FBI's Records Systems**

The FBI uses the Automated Case Support System ("ACS") to conduct FOIA searches of its Central Records System ("CRS"). (Hardy Decl. ¶ 15). The CRS contains "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." (*Id.*). The system "consists of a numerical sequence of files, called FBI classifications, which are

---

[2] The court inquired at oral argument why Plaintiff's previous correspondence with the FBI was not located during the FBI's searches. The FBI notes that it is difficult to prove a negative, but surmises that these letters were not indexed to Plaintiff's name because it was not deemed pertinent either to the agency or any investigation. (3d Hardy Decl. ¶¶ 12-13). The court finds this explanation reasonable.

[3] The OIP affirmed the response about watch list documents only under Exemption 7(E). (Hardy Decl. Ex. H).

broken down according to subject matter." (*Id.*). The ACS is an "internal computerized subsystem of the CRS." (*Id.* at ¶ 16). The CRS cannot be queried for data, so the information is instead "duplicated and moved to the ACS so that it can be searched." (*Id.*). A search of the ACS is accomplished by using alphabetized General Indices. (*Id.* ¶ 17). The General Indices include main entries, which carry "the name corresponding with a subject of a file contained in the CRS," and reference entries, also called cross-references, which are "generally only a mere mention or reference to an individual, organization, or other subject matter contained in a document located in another main file on a different subject matter." (*Id.*). Certain records contained in the CRS are maintained at FBI headquarters, while some are maintained in field offices. (*Id.* ¶ 15).

The ACS contains three integrated "applications that support case management functions for all FBI investigative and administrative cases." (*Id.* ¶ 19). Investigative Case Management ("ICM") "provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads." (*Id.*). Electronic Case File ("ECF") is the "central electronic repository for the FBI's official text-based documents." (*Id.*). The Universal Index ("UI") is a "complete subject/case index to all investigative and administrative cases." (*Id.*). The UI contains approximately 115.4 million records, and it "functions to index names to cases, and to search names and cases for use in FBI investigations." (*Id.*) The FBI "does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval." (*Id.*) "The General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, e.g., 'Cina A. Ryan.'" (*Id.*). Data is input into these systems by both FBI headquarters and field offices. (*Id.* ¶ 19).

The Electronic Surveillance indices ("ELSUR") "are used to maintain information on subjects whose electronic and/or voice communications have been intercepted as the result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI."  (*Id.* ¶ 21).  The ELSUR indices are separate from the CRS.  They include "individuals who were the (a) targets of direct surveillance, (b) participants in monitored conversations, and (c) owners, lessors, or licensors of the premises where the FBI conducted electronic surveillance."  (*Id.* ¶ 22).  ELSUR indices are maintained both in field offices and at FBI headquarters.  (*Id.* ¶ 24).

### B.  The FBI's searches

In response to Plaintiff's FOIA request, the FBI "conducted a phonetic search of its automated indices to the CRS using plaintiff's first name, middle initial and last name, 'Cina A. Ryan,' and his alias 'Alireza Shishechi.'"  (*Id.* ¶ 25).  A phonetic search "breaks names down" based on their phonetic characteristics, such that any alternative spellings with an 80% phonetic match to the search used; for instance documents containing the name "Sina Ryan" would also have been returned.  (*Id.* ¶ 25 n.3).  The search is also run so that records containing any matching name will be located even if the name is arranged in one of several permutations, e.g. First Name, Last Name; Last Name, First Name; Last Name, First Name, Middle Initial; etc.  (3d Hardy Decl. ¶ 7(a)).  The FBI used Plaintiff's date of birth "to facilitate the identification of potentially responsive files."  (Hardy Decl. ¶ 25)  This search was of main entries only, pursuant to the FBI's FOIA policy of searching only main entries as an initial matter.  (*Id.* ¶ 25 n.4).  The FBI searched the ELSUR indices for those same names.  (*Id.* ¶ 26).  No responsive documents subject to FOIA were found.  (*Id.* ¶¶ 25-26).  After Plaintiff initiated this litigation, the FBI again searched the CRS for "Cina A. Ryan," "Alireza Shishechi," and "Sina Ryan."  (*Id.* ¶ 27).  No main or cross reference entries subject to FOIA were found.  (*Id.*).  The terms "Cina A. Ryan,"

4

"Alireza Shichechi,"[4] and "Sina Ryan" were used to search the ELSUR indices a second time, with similar negative results. *Id.* ¶ 28.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotrex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citations omitted). Upon an agency's motion for summary judgment on

---

[4] The FBI has alternatively spelled Plaintiff's alias as "Shishechi" and "Shichechi." However, the CRS and ELSUR were each searched at least once (Hardy Decl. ¶¶ 25-26) with the spelling "Shishechi," the spelling provided by Plaintiff (Compl. Ex. 10), so the discrepancy is of no consequence here.

the grounds that it has fully discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). An agency will be granted summary judgment on the adequacy of its search if it "show[s] beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).

"The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was *adequate*." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original). An agency need not search each of its records systems. *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Instead, a search may be reasonable if it includes all systems "that are likely to turn up the information requested." *Id.* Furthermore, the "adequacy of the search . . . is judged by a standard of reasonableness and depends, not surprisingly, on the facts of each case." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Courts are mindful, however, that "congressional intent tilt[s] the scale in favor of disclosure." *Morley*, 508 F.3d at 1114 (internal citation omitted).

To meet its burden, "the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d at 1485. These declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Furthermore, an agency can show "reasonableness" in its affidavit by "setting forth the search terms and the type

of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom.*, *Sanders v. U.S. Dep't of Justice*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (citation omitted).

III.   ANALYSIS

The parties dispute whether the FBI adequately conducted its search.[5] Plaintiff challenges the adequacy of the FBI's search on several grounds.

### A. Failure to Search Outside the FBI

Plaintiff, pointing to DOJ guidance that records in the possession of a government contractor for record management are subject to FOIA, argues that the FBI's search was inadequate because the FBI interpreted his request "to exclude records sent to outside third parties" and to "exclude records originating from outside third parties." (Pl. Aff., ECF No. 7, at 2). Plaintiff's argument is based on his apparent belief that "his records have been transferred from the FBI sometimes [sic] ago to other 17-18 different government homeland security agencies or their private contractors, who have been conducting this intense surveillance on him." (Pl. Opp'n, ECF No. 7, at 6). In support of his argument, Plaintiff correctly points out that

---

[5] Plaintiff does not appear to challenge the FBI's refusal to confirm or deny the existence of documents that would confirm or deny whether Plaintiff is on any government watch list pursuant to FOIA Exemption 7(E). Defendants raised the argument in their motion (Def. Mot. at 6-8) but Plaintiff has not addressed the exemption in any of his submissions. Absent a compelling challenge, the response survives the court's review. A similar response to a similar request was affirmed by Judge Townes of the Eastern District of New York in *Platsky v. Nat'l Sec. Agency*, No. 11-cv-4816 (filed Sept. 29, 2011). Plaintiff there requested "any files in [the FBI's] possession that contain my name." Op. at 2, ECF No. 20, Jan. 30, 2013. The FBI responded that it could neither "confirm nor deny the existence of certain records which would tend to indicate whether an individual is or ever was listed on any government terrorist watch list." *Id.* The court affirmed that response, which was based, as is the FBI's response here, on FOIA Exemption 7(E). *Id.* at 7-8, *aff'd* 547 Fed. Appx. 81 (2d Cir. 2013); *see also Skurow v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319, 331 (D.D.C. 2012) (TSA properly withheld, as information specifically prohibited from disclosure by statute and pursuant to Exemption 3, documents which could be used to determine whether an individual was on the No Fly list); *Vazquez v. U.S. Dep't of Justice*, 887 F. Supp. 2d 114, 117-18 (D.D.C. 2012) (FBI properly asserted Exemption 7(E) to refuse to confirm or deny existence of documents concerning requester in the National Crime Information Center, which would reveal whether plaintiff was in any one of a number of sensitive law enforcement databases).

documents "maintained for an agency by an entity under Government contract, for the purposes of records management" are subject to FOIA. 5 U.S.C. § 552(f)(2)(B). However that obligation is not triggered, and has not been violated, in this case.

This provision primarily addresses the availability of physical documents committed to the custody of a third-party for storage, and does not necessarily impose an affirmative obligation to search for and produce documents in the possession of third party contractors. *Am. Small Business League v. U.S. Small Business Admin.*, 623 F.3d 1052, 1053-54 (9th Cir. 2010). Nothing in the record suggests that the FBI has transferred any of its records to a government contractor for records management, or that any documents so transferred would not have been found in the searches described above. To the contrary, records in the systems searched by the FBI for the time period during which Plaintiff claims he was under electronic surveillance are all electronically indexed. (Hardy Decl. ¶ 16 (ACS was implemented in October 1995); *id.* ¶ 17 n.2 (General Indices became fully automated in 1987); *id.* ¶ 21 (ELSUR indices date to 1960 and were automated in 1991)). If those indices did indicate the existence of any records about Plaintiff, and if those records were located in an offsite third-party storage facility, FOIA and DOJ's implementing guidance confirm that those records would be subject to Plaintiff's FOIA request. But since the FBI's search revealed the existence of no responsive records, the FBI was under no obligation to locate and determine the custodial status of any responsive records. And, to the extent Plaintiff believes that documents about him generated by the FBI have since been given into the custody of other national security agencies, the FBI has stated (and Plaintiff has provided no evidence to call that statement into doubt) that if the FBI had given its records about Plaintiff to another federal agency, there would be a record of that transfer in the CRS – and that no such records were located. (2d Hardy Decl. ¶ 10).

Plaintiff also seems to argue that the FBI was required to conduct a search for records held by any and all federal agencies that might be engaged in surveillance of Plaintiff. FOIA, however, requires only that the agency search for and produce documents in its possession, not search for records across the entire federal government. *See, e.g.*, *McGhee v. C.I.A.*, 697 F.2d 1095, 1109 (D.C. Cir. 1983) (adopting rule that "all records in an agency's possession, whether created by the agency itself or by other bodies covered by the Act, constitute 'agency records'"). *If* the FBI had located documents created by a different agency, it might under certain circumstances refer Plaintiff's FOIA request to that agency. *Keys v. U.S. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 66-67 (D.D.C. 2008) (describing referral procedures). That referral, however, is distinct from an affirmative obligation to search for records in all agencies, which does not exist under FOIA. *Lewis v. U.S. Dep't of Justice*, 867 F. Supp. 2d 1, 13 (D.D.C. 2011).

### B.  Failure to Search Other Records Systems

Plaintiff argues that the FBI must search "any and all records systems and indices pertaining to the FBI's Surveillance Data Warehouse," "both main file and cross-reference searches of the FBI's 'Bureau Mailing Lists,'" and "all of FBI's indices, filing systems, and locations, including those that the Plaintiff has not specified by name and those of which the Plaintiff's [sic] may not be aware." (Pl. Aff., ECF No. 7 at 2).

As a matter of law, a requester's demand that certain records systems be searched does not obligate the agency to search those systems. To the contrary, an "agency's search obligations are dictated by whether the scope of the search is reasonably calculated to uncover all relevant documents." *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 44 (D.D.C. 2013) (citing *Morley*, 508 F.3d at 1114) (internal quotation omitted). The agency *might* need to search the records systems specified by the requester if the agency could reasonably expect to locate responsive documents on that system. "Mere speculation that as yet uncovered documents may exist does not

undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc.*, 926 F.2d at 1201. Plaintiffs in *Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11 (D.D.C. 2013) made a similar argument. Plaintiffs there had filed a series of FOIA requests seeking records on the Occupy Wall Street movement. *Id.* at 19-21. The FBI conducted a search of CRS for various iterations of "Occupy" and conducted text searches of ECF (in light of the fact that the "Occupy Movement has been widely publicized"). *Id.* at 24-25. Plaintiffs argued that the FBI ought to have also searched ELSUR and "Physical Surveillance (FISUR) records systems, the FBI's email system, or shared drives used by FBIHQ and field offices." *Id.* at 25. The Court rejected that argument and found that a search of only CRS was adequate because "records responsive to Plaintiffs' requests would normally be found in this comprehensive system" and that files in shared drives and ELSUR would have been identified through the CRS search. *Id.* That search was "reasonably calculated to discover the requested documents." *Id.* (citing *SafeCard Servs., Inc.*, 926 F.2d at 1201); *see also Brown v. F.B.I.*, 873 F. Supp. 2d 388, 399 (D.D.C. 2012) (search of ELSUR and CRS in response to FOIA request for all files related to Plaintiff was adequate).

As a factual matter, the FBI has demonstrated that the records systems which Plaintiff says should have been searched would not be expected to contain responsive records. According to the FBI, the Data Warehouse System exists "to analyze evidence gathered during criminal investigations" and since there is no record of the FBI "having conducted ELSUR on Plaintiff…it would not be reasonable to conclude that there would be any responsive records in a system specifically designed to analyze ELSUR information." (2d Hardy Decl. ¶ 7). Similarly, the "Bureau Mailing List" is a list of people and groups that receive FBI publications, which have nothing to do with surveillance. (*Id.* ¶ 8).

10

In addition to the locations discussed above, Plaintiff refers in his supplemental memorandum to the existence of shared storage drives called I-drives, S-drives, and H-drives which the FBI allegedly uses to store files that are not indexed and therefore are not located in FOIA searches. (ECF No. 10 at 2).

Specifically, Plaintiff appended excerpts from testimony and evidence in other cases implying that the FBI has in the past strategically stored files in unindexed drives in order to avoid disclosure obligations in criminal discovery and FOIA. First, Plaintiff attached an affidavit from 2001 in what appears to be a state criminal proceeding in Oklahoma in which a former FBI agent described a deliberate system of keeping certain records, referred to as "zero files," outside the official case file to avoid turning those records over to parties in a criminal matter. (Pl. Ex. F, ECF No. 10-1 at 2). Plaintiff also attached trial testimony from *Trentadue v. CIA et al.*, No. 08-cv-788, a lawsuit currently pending in U.S. District Court for the District of Utah, concerning FOIA requests for specific records related to the Oklahoma City Murrah Federal Building bombing. In a recent bench trial (resolution of which appears to be stayed), the court heard testimony confirming the existence of shared storage drives. (Pl. Exs. G-H, ECF No. 10-1 at 4-7). Testimony in that matter also alluded to a finding by the court in *Islamic Shura Council of S. Cal. v. FBI*, 779 F. Supp. 2d 1114 (S.D. Cal. 2011) that the FBI, through a declaration by Mr. Hardy, had deliberately provided that court with misinformation. The FBI's misrepresentation was revealed in 2011, at the same time the FBI's motion for summary judgment was pending in *Trentadue*. In light of the revelation, the *Trentadue* court required the FBI to provide an additional certification that all of the information the FBI had supplied to the court was true. (Pl. Ex. I, ECF No. 10-1 at 8; *see also Trentadue v. CIA*, No. 08-cv-788, Order (ECF No. 82), Apr. 13, 2011). Plaintiff argues that these practices (assuming they are ongoing)

11

demonstrate bad faith by the FBI and also prove that the FBI's search was not adequate because it did not search those unindexed shared drives.

The Court is aware that prior acts of bad faith do "not defeat the presumption of good faith in all subsequent cases." *Williams v. F.B.I.*, No. 13-cv-56, 2014 WL 1320262, at *5-6 (D. Utah Mar. 31, 2014). Even so, it must address the allegations Plaintiff has raised. The FBI responded to these concerns in the Third Hardy Declaration. There, Mr. Hardy explains that the S and H drives are not single drives, but rather shared (S) drives used in various FBI offices and home (H) drives assigned to individual employees. (3d Hardy Decl. ¶15(b)). Mr. Hardy also explains that the I drive is no longer in existence but when it did exist, prior to 2001, it was used to hold draft work product before it was finalized and indexed to the CRS. (3d Hardy Decl. ¶ 15(a)). The FBI explains that the "comprehensive searches of the CRS and ELSUR Indices failed to locate any information about plaintiff – or even give any indication at all that the FBI has ever had any investigative or other interest in him." (3d Hardy Decl. ¶15(b)). Given the lack of responsive documents in the comprehensive record systems, the FBI argues it was reasonable to conclude that searching less comprehensive records systems – i.e. individual office and employee drives – was unnecessary. The Court agrees.

### C. Failure to Search FBI Field Offices

Plaintiff argues that, since the alleged surveillance of him began in Florida, the FBI must conduct searches of FBI field offices in Florida. (Supplemental Memorandum, ECF No. 10 at 6-7). As noted above, it is not for Plaintiff to dictate where the FBI searches – the FBI need not "conform its search to the dictates of a requester, but rather [must] conduct a search that is reasonably expected to produce the information requested." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 120 (D.D.C. 2010). Given the universal nature of the records systems that were

searched, there is no reason to believe that documents created, or physically located, in field offices would not have been indexed in those records systems.

### D.  Use of Improper Search Terms

Finally, Plaintiff argues the FBI did not utilize an appropriate set of search terms. Plaintiff asserted that the search should have included the name "Cina Ryan," in light of Plaintiff's realization that certain forms of government-issued identification do not include his middle initial.  (Pl. Opp'n, ECF No. 7, at 7).  The FBI's first search of the CRS was for "Cina A. Ryan," and the Hardy Declaration asserted that this search would pick up any documents with the name "Cina Ryan" based on the phonetic similarity to the name "Cina A. Ryan."  (Hardy Decl. ¶ 25 n.3).  The FBI moreover asserted that any records containing the name "Cina Ryan" that might have been erroneously excluded in the "Cina A. Ryan" search were nonetheless included when the FBI conducted a second search for "Sina Ryan."  (*Id.* ¶ 27).  In response to Defendant's motion for summary judgment, Plaintiff asserted for the first time that there were additional alternative spellings of his name, including "Cina A. Rayan" and "Sina Rayan."  (Am. Affidavit, ECF No. 8, at 1).  The FBI conducted a search using those alternatives and still located no results.  (2d Hardy Decl. ¶ 9).  Plaintiff noted that the FBI did not search for one particular alternative variation of his name: Cina Ryan, the variation which appears on Plaintiff's government-issued identification.  (Reply to 2d Hardy Decl., ECF No. 12 at 2).  The Third Hardy Declaration explains that this was unnecessary, because the search was conducted based on phonetic similarity and for different breakdowns of the name (i.e. with and without middle initials), such that any records containing the name "Cina Ryan" would have been located from the previously-run searches.  (3d Hardy Decl. ¶ 7).  And, to the extent any records identifying Plaintiff as "Cina Ryan" had been excluded, the FBI also conducted a separate search for that name and located no responsive records.  (*Id.* ¶ 9).  The FBI has unquestionably now searched

the CRS with all reasonable permutations of Plaintiff's name, and its search methodology indicates that documents with alternative spellings not in the record could have been located as well. This is more than adequate.

The same cannot be said with regard to ELSUR. Hardy declares that "the FBI's ELSUR Indices were searched using both the names 'Cina A. Ryan,' and 'Cina Ryan,' as well as the other names [Plaintiff] provided. As explained in [Hardy's] first declaration, those searches yielded negative results." (3d Hardy Decl. ¶ 10). It is not clear precisely what Hardy means to convey in this paragraph. This could be read to assert that the FBI searched ELSUR for "Cina Ryan" at some point before May 14. If so, that assertion is contradicted by Hardy's previous declarations, which establish that the FBI ran searches in ELSUR only for "Cina A. Ryan," "Alireza Shishechi," (Hardy Decl. ¶¶ 25-26) and "Sina Ryan." (*Id.* ¶ 28). Other names ("Cina Rayan," "Sina Rayan," "Cina A. Rayan," "Sina A. Rayan," (2d Hardy Decl. ¶ 9), and "Cina Ryan" (3d Hardy Decl. ¶ 9)) were used to search CRS but are not specifically identified as having been used to search ELSUR. Given this ambiguity, summary judgment on the search of ELSUR is not warranted at this time.

Alternatively, the FBI may believe that, based on the phonetic search function, running an additional search for "Cina Ryan" in ELSUR would be unnecessarily duplicative. This is a reasonable belief, based on the FBI's explanation of how the phonetic search function functions. However, the record does not demonstrate that searches in ELSUR apply a phonetic search function – Hardy's explanation of that function appears to apply only to ACS. (3d Hardy Decl. ¶ 7 (the FBI "used the phonetic search capabilities of ACS")). Because the court is without evidence to conclude that a search of ELSUR was conducted in such a way that the name on

Plaintiff's government-issued identification was included in the search, summary judgment is denied as to this search.

## IV. CONCLUSION

Plaintiff's arguments attempt to impose a burden on Defendants inconsistent with the requirements of FOIA, and the FBI has demonstrated that it conducted a search reasonably calculated to locate responsive records. Summary judgment must therefore be GRANTED in favor of the FBI on the issue of whether the FBI searched appropriate locations. However, summary judgment must be DENIED, without prejudice, because the record does not clearly demonstrate that the ELSUR database was searched in a way that would reveal documents indexed to all variations of Plaintiff's name.

A corresponding order will issue separately.

Dated: July 10, 2015