UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CINA A. RYAN,                   Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al.*,                   Defendants. | Civil Action No. 14-cv-1422 (TSC) |

## MEMORANDUM OPINION

Plaintiff Cina A. Ryan brings this FOIA action seeking all files and records bearing his name, or any variant of it. Defendants, after conducting multiple searches and finding no responsive records, filed a first motion for summary judgment (ECF No. 4), which the court granted in part and denied in part. (ECF No. 19). Defendants conducted a further search, and now renew their motion for summary judgment. (ECF No. 21). For the following reasons, the court GRANTS Defendants' motion.

### I.     BACKGROUND

Plaintiff, who brings this action *pro se,* alleges that he has been under constant FBI surveillance since shortly after September 11, 2001. (Compl. ¶ 8). In October 2010, he submitted a FOIA/Privacy Act request for his "complete FBI file." (Hardy First Decl. ¶ 6). After being told that he had not filed sufficient information for a search to be conducted, Plaintiff provided additional information, and in November 2010, the FBI notified him that it had not located any main file records responsive to his request, and any requests pertaining to government watch lists could not be confirmed or denied pursuant to FOIA Exemption (b)(7)(E),

1

5 U.S.C. § (b)(7)(E).  (*Id*. ¶¶ 7-10).  Plaintiff appealed the FBI's response to the Department of Justice Office of Information Policy, which subsequently affirmed the FBI's response.  (*Id*. ¶ 11).  On August 20, 2014, Plaintiff filed this suit.

In its first Motion for Summary Judgment, the FBI detailed how it conducted phonetic searches of both its Automated Case Support System ("ACS") and Electronic Surveillance indices ("ELSUR") for responsive records.  (*Id*. ¶¶ 27-28).  The ACS is used to conduct FOIA searches of the agency's Central Records System ("CRS").  (*Id*. ¶ 15).  The CRS contains "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes."  (*Id.*).  The system consists of a numerical sequence of files that are broken down according to subject matter, but because the CRS cannot be queried for data, the information in it is duplicated and moved to the ACS to be searched.  (*Id.* at ¶¶ 15-16).  ACS is then queried using alphabetized General Indices.  (*Id*. ¶ 17).  The General Indices include main entries, which carry "the name corresponding with a subject of a file contained in the CRS," and reference entries, also called cross-references, which are "generally only a mere mention or reference to an individual, organization, or other subject matter contained in a document located in another main file on a different subject matter."  (*Id.*).  By searching the General Indices, the FBI can determine what information it may have in its CRS files on a particular subject matter or individual, such as in this dispute, "Cina A. Ryan."  (*Id*. ¶ 18).  The FBI does not index every name in its files, only information it considers pertinent, relevant, or essential for future retrieval.  (*Id*. ¶ 20).  Certain records contained in the CRS are maintained at FBI headquarters, while others are maintained in field offices.  (*Id*. ¶ 15).

The ELSUR indices maintain information on subjects whose electronic and/or voice communications have been intercepted by the FBI.  (*Id*. ¶ 21).  The ELSUR system is separate

from the CRS. It contains information on "individuals who were the (a) targets of direct surveillance, (b) participants in monitored conversations, and (c) owners, lessors, or licensors of the premises where the FBI conducted electronic surveillance." (*Id.* ¶ 22). Like CRS, ELSUR indices are maintained both in field offices and at FBI headquarters. (*Id.* ¶ 24).

The FBI's phonetic searches in ACS and ELSUR used Plaintiff's first name, middle initial, and last name, including the alternative versions of Plaintiff's name "Cina A. Ryan," "Alireza Shishechi," and "Sina Ryan." (*Id*. ¶¶ 27-28). No main or cross reference entries subject to FOIA were found in ACS, nor were responsive records found in ELSUR. (*Id*.). Since searches in both CRS and ELSUR failed to locate any information about plaintiff, Defendant moved for summary judgment for the first time on October 9, 2014. (Hardy Third Decl. ¶ 15(b)).

In reviewing the sufficiency of the searches, the court found that: (1) nothing in the record suggested that the FBI transferred any of Plaintiff's records to any other agency or contractor for management since CRS would have recorded their transfer, and no such records were found; (2) a requester's demand that certain records systems be searched did not obligate the agency to search those systems, since the FBI demonstrated these systems would not be expected to contain responsive records; (3) there was no reason to believe that documents created or physically located in field offices would not have been indexed in the searched records systems; and (4) the FBI's search methodology in CRS using all reasonable permutations of Plaintiff's name was adequate. (First Summ. J. Op. at 7-14). Therefore, the Court granted summary judgment on the issue of whether the FBI searched appropriate locations. (*Id*. at 15).

However, the court denied summary judgment as to one search. The court determined that "the record did not clearly demonstrate that the ELSUR database was searched in a way that

would reveal documents indexed to all variations of Plaintiff's name." (*Id.*). While the third declaration from David Hardy, the Section Chief of the Record/Information Dissemination Section, Records Management Division of the FBI, noted that "the FBI's ELSUR Indices were searched using both the names 'Cina A. Ryan,' and 'Cina Ryan,' as well as the other names [Plaintiff] provided," Hardy's prior declarations only "establish[ed] that the FBI ran searches in ELSUR . . . for 'Cina A. Ryan,' 'Alireza Shishechi,' and 'Sina Ryan.' Other names ('Cina Rayan,' 'Sina Rayan,' 'Cina A. Rayan,' 'Sina A. Rayan,', and 'Cina Ryan') were used to search CRS but are not specifically identified as having been used to search ELSUR." (*Id.* at 14) (internal citations omitted). While the FBI could reasonably have believed that, "based on the phonetic search function, running an additional search for 'Cina Ryan' in ELSUR would be unnecessarily duplicative," given the ambiguity in the declarations, the court did not have enough evidence to conclude that the ELSUR search was conducted in an adequate manner. (*Id.* at 14-15).

Following the court's ruling, the FBI subsequently conducted further queries and now renews its motion for summary judgment, arguing that its searches of the ELSUR database are adequate to meet its obligations under FOIA. Plaintiff again opposes summary judgment, arguing that the searches are still not adequate.

## II.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law[.]" *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (internal citation omitted). In determining whether a genuine issue of material fact exists,

4

the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 602 F. Supp. 2d 121, 123 (D.D.C.2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under clearly delineated statutory language." *Id.* (internal citation and quotation marks omitted); *see also* 5 U.S.C. § 552(a), (b).

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (internal citation omitted). When an agency moves for summary judgment on the grounds that it has discharged its FOIA obligations, all underlying facts and

inferences are analyzed in the light most favorable to the FOIA requester, and only after the agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). An agency will be granted summary judgment on the adequacy of its search if it "show[s] beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citing *Weisberg*, 705 F.2d at 1351).

"The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was *adequate*." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original) (internal citation omitted). Adequacy "is judged by a standard of reasonableness and depends, not surprisingly, on the facts of each case." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). "There is no requirement that an agency seek every record system," rather a search may be reasonable if it includes all systems "that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Courts are mindful, however, that "congressional intent tilt[s] the scale in favor of disclosure." *Morley*, 508 F.3d at 1114 (internal citation omitted).

To meet its burden and show adequacy, "the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith." *Weisberg*, 745 F.2d at 1485. These declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation omitted). An agency can show "reasonableness" in its affidavit by "setting forth the search terms and the type of

search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom.*, *Sanders v. U.S. Dep't of Justice*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (internal citation omitted).

### III.   ANALYSIS

The sole issue in dispute here is whether Defendant adequately searched the ELSUR indices. In support of its Motion, Defendant provided a Fourth Declaration from David Hardy to address concerns the court identified in its prior Opinion. In his declaration, Hardy explains that because ELSUR only contains information gathered as a result of electronic surveillance, related information necessarily required for such surveillance would be maintained in a case file in CRS; for example, all court records authorizing the electronic surveillance. (Hardy Fourth Decl. ¶ 7). Therefore, the "existence of a CRS record is a condition precedent for the existence of records in the ELSUR system." (*Id*.). Since there were no responsive records found in CRS, the FBI would not expect to find any records in the ELSUR system. (*Id*.). Nonetheless, in response to the court's Opinion, the FBI conducted additional searches in ELSUR, this time using the variations of Plaintiff's name "Cina Rayan," "Sina Rayan," "Cina A. Rayan," and "Sina A. Rayan." (*Id*. ¶¶ 9-10). Those searches yielded no responsive information.

Plaintiff, however, contends these searches are still not adequate, although certain of his arguments do not appear to be responsive to the FBI's assertions. First, Plaintiff challenges whether the searches the FBI undertook were conducted in good faith. (Pl. Opp'n ¶¶ 10-12). Specifically, Plaintiff queries whether "the FBI has demonstrated that, in the past, it has never misled courts of law in this type of case," and states, without any factual basis, that he is "100% certain" that the FBI is still concealing thousands of pages of his records. (*Id*. ¶ 10). Plaintiff

also asks whether the court has verified the FBI's affidavits against his FOIA request records to confirm whether they are true. (*Id*. ¶ 12). Plaintiff alludes to alleged statements by former FBI Director Robert Mueller and President Obama discussing surveillance, which the court interprets as a challenge to the FBI's good faith. (*Id*. ¶¶ 32-33).

Second, Plaintiff discusses his general frustration at his inability to obtain counsel in this matter. (*Id*. ¶¶ 16-19). Third, he alleges that the government and judicial system are biased against him and those who are not "at the top." (*Id*. ¶ 34). Fourth, Plaintiff states that a letter he sent to former FBI Director Mueller in 2011 did not appear to be in the docket on PACER. (*Id*. ¶¶ 35-36).[1] Fifth, Plaintiff alleges that there is a YouTube video of him discussing how the FBI controls his mind under the name "Singh R." (the court construes this mention of a possible alias to relate to the adequacy of the agency's search). (*Id*. ¶ 48). Finally, Plaintiff asks the court to provide him with guidance to enable him to better pursue his case. (*Id*.).

The court addresses Plaintiff's arguments mindful that "[a]document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted).[2]

Having reviewed the Defendants' motion, the Fourth Hardy Declaration, and the record herein, the court finds that the FBI has conducted an adequate search for responsive records corresponding to Plaintiff's request. Any ambiguity the court found in Defendant's prior motion as to whether it searched ELSUR for the name "Cina Ryan" is eliminated by the clear explanation in Hardy's Fourth Declaration that (i) a failure to find responsive documents in CRS

---

[1] Plaintiff attached a copy of the letter to his Opposition. (Pl. Opp'n., Ex. 24)

[2] The court will not discuss Plaintiff's various allegations of government misconduct unrelated to this FOIA dispute. *See generally*, Pl's Opp'n.

means that Defendant is unlikely to find responsive records in ELSUR; and (ii) that prior ELSUR searches did include variations of the names Plaintiff has gone by—including the name on his government-issued identification. (Hardy Fourth Decl. ¶ 8). Moreover, Defendant further supported the adequacy of its search by conducting additional searches in ELSUR using different possible phonetic spellings of Plaintiff's name. (*Id*. ¶¶ 9-10). Defendant's search methodology was discussed in "detailed, nonconclusory affidavits submitted in good faith," *Weisberg,* 745 F.2d at 1485, and provided the search terms used, the files searched, and explicitly declared that all files likely to contain responsive records were searched. *Sanders*, 729 F. Supp. 2d at 155. This satisfies Defendant's burden to demonstrate it has conducted an adequate search for records responsive to Plaintiff's request.

In contrast, none of Plaintiff's arguments are availing, because they do not deal with the adequacy of the search, nor do they raise any genuine material issue of fact. "[F]actual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb*, 433 F.3d at 895 (D.C. Cir. 2006) (citing *Anderson*, 477 U.S. at 248). With regard to Plaintiff's otherwise unsupported allegation of bad faith, the court notes that agency declarations in FOIA disputes are presumed to be in good faith, and that presumption "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs*., 926 F.2d at 1200, (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). But that is all Plaintiff provides—conclusory, unfounded allegations of wholesale government crimes and conspiracies, while submitting no fact based allegation that Defendant is attempting to mislead the court.[3] Additionally, as Plaintiff noted in his Opposition,

---

[3] Plaintiff alleges that the court's use of the word "allegations" is "unfair, unjust," and "prejudicial." (Pl. Opp'n ¶¶ 11, 19). The word allegation connotes an unproven statement. *See* ALLEGATION, Black's Law Dictionary (10th ed. 2014) ("allegation n. (15c) 1. A declaration that something is true; esp., a statement, not yet proved, that someone has done something wrong or illegal. 2. Something declared or asserted as a matter of fact, esp. in a legal

the FBI directly responded to Plaintiff's concerns of bad faith in Hardy's Third Declaration, including his allegations regarding the S, H, and I drives. (Pl. Opp'n ¶ 11).

Plaintiff's assertions regarding his inability to obtain counsel are similarly unresponsive to the Defendants' Motion. While it is undoubtedly difficult for a non-lawyer to represent himself, the court has taken Plaintiff's *pro se* status into account and tried to address the Plaintiff's claims in language understandable to a non-lawyer, including, amongst other things, holding a hearing at Plaintiff's request, and addressing multiple non-substantive issues.

As to the letter which Plaintiff alleges he sent in 2011 to then-FBI Director Mueller, Plaintiff states that he signed the letter with the name "Cina Ryan." (Pl. Ex. 24). Since this is a name Defendant specifically queried in CRS, based on the Hardy Declarations, it is clear that if such a letter was received by Defendant, it was not indexed. (Hardy Fourth Decl. ¶ 8). The failure to index this letter—if the FBI actually received it—is likely because "[t]he decision to index names other than subjects, suspects, and victims is a discretionary decision," and Defendant "indexes only that information considered to be pertinent, relevant, or essential for future retrieval," which it may not have found the allegations of government misconduct contained in the letter to be. (Hardy First Decl. ¶ 20).

Lastly, while a YouTube video of Plaintiff under the name "Singh, R." may exist, it is not an FBI file, and Plaintiff has not previously alleged that he has gone by that name, nor that the FBI would have any reason to search for records responsive to that name. Plaintiff's Complaint requests his "complete file" responsive to "his name, Cina A. Ryan and any and all variant spelling such as Cina Ryan, Sina Ryan, and the name he was formerly known by, Alireza

---

pleading; a party's formal statement of a factual matter as being true or provable, without its having yet been proved; averment.").

Shishechi." (Compl. at 1).  The FBI conducted multiple, adequate phonetic searches in CRS and ELSUR for all possible variants of these requested names.

"While the pleadings of pro se parties are to be 'liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' '[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure [.]'"  *Neuman v. United States*, 70 F. Supp. 3d 416, 422 (D.D.C. 2014) (internal citations omitted).  "Accordingly, in the context of Rule 56, a 'pro se plaintiff must meet his burden of proving that there exists a genuine dispute as to a material fact to survive a motion for summary judgment.'"  *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 61 (D.D.C. 2015) (citing *Id*.).  The court finds that Plaintiff has not met his burden under Rule 56, because he raises no genuine issue of material fact, and Defendant has met its burden by demonstrating the adequacy of its search.

## IV.     CONCLUSION

The FBI has conducted an adequate search for any records responsive to Plaintiff's FOIA request.  Defendant's Motion for Summary Judgment is therefore GRANTED.

A corresponding order will issue separately.

Dated: March 31, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge